# EXHIBIT
# 1

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
# NORTHERN DIVISION

| | |
|---|---|
| GERALDINE LAUTURE : | |
|     Plaintiff : | |
| : | |
| v. : | Civil Action No.: CCB-08-943 |
| : | |
| ST. AGNES HOSPITAL : | |
|     Defendant : | |

## PLAINTIFF'S AFFIDAVIT

I, Geraldine Lauture, adult, over the age of 18 years and competent to testify, do hereby depose and swear as follows:

1. That I am the Plaintiff in this matter and I have personal knowledge of the matters stated herein.

2. I am black female born outside of the United States in Haiti of Haitian parents.

3. I am married and I have two children.

4. That I used to be known as Geraldine Dorzin as my maiden name was Dorzin.

5. I have an Associate Degree in Medical Laboratory Technology from New York City Technical College, New York, a copy of which degree is attached to my response to Defendant's motion for summary judgment as Exhibit 4.

6. I also have a Certificate of Achievement for successful completion of 1000 hours of training in Medical Laboratory Technology. A copy of the certificate is attached to my response to Defendant's motion for summary judgment as Exhibit 5.

7.  That I started working for Defendant on or about July 21, 2004 as a Medical Laboratory Technician working the evening shift, Monday through Friday.

8.  That I worked the evening shift from the time I was hired up to December 5, 2005 when I requested to be transferred to the day shift in order to allow me assist my children in their schoolwork.

9.  During that period of time between July 2004 and December 2005, I worked the evening shift alone, received satisfactory evaluations and was given the responsibility to train two new Medical Technologists before I transferred to the day shift.

10. That attached as Exhibit 8 is a Competency Assessment Results for the period July 2005 through December 29, 2005 showing my high scores in the areas stated.

11. Attached as Exhibit 9 is a copy of the Planter Bench Competency test also showing a very high score.

12. That attached as Exhibit 10 is a copy of the Evening Planter Duties/Training Checklist showing that I trained Benjamin Roberts who replaced me in the evening shift.

13. That attached also attached as Exhibits 25, 26, 27, 28, and 29 are business records of the Baltimore Community Relations Commission and produced to me by Defendant during discovery in this case.

14. That I was hired, and my immediate supervisor when I was hired was Sally Ondiek, a black female.

15. That in June 2005, when Ms. Ondiek left Defendant's employment, I came under the direct supervision of Ms. Jane Weiger and Ms. Margaret Kinch. Both Ms. Weiger and

Ms. Kinch are Caucasian and U.S. Born.

16.     That also working in the Microbiology Lab as a Laboratory Assistant was one Ms. Stephanie Rutter, also a Caucasian and U.S. born.

17.     While Ms. Rutter was required to assist me, Ms. Rutter refused to do so and my complains against Ms. Rutter to Defendant were completely disregarded.

18.     From on or about December 5, 2005 when I transferred to the day shift to February 8, 2006, (approximately two months after Plaintiff's transfer to day shift), I had been written-up on two occasions, suspended, falsely accused of potentially putting the entire hospital at risk, and ordered retrained by Defendant.

19.     On at least two occasions, I complained to Defendant that I was been subjected to race and/or national origin discrimination by Ms. Weiger and Ms. Kinch and Defendant failed to investigate my complaints of discrimination.

20.     While Ms. Weiger and Ms. Kinch failed to address my complaints against Ms. Rutter and while Defendant in turn failed to investigate my complaints of discrimination against Ms. Weiger and Ms. Kinch, on March 9, 2006, I was summoned into Defendant's Human Resource's office on an alleged complaint by Ms. Rutter that I refused to talk to her.

21.     That which meeting Ms. Weiger, Ms. Kinch, and other Human Resources personnel were present. All the aforementioned Defendant's personnel at the meeting are Caucasians and/or American born.

3

22. That at the said meeting of March 9, 2006, I was intimidated, frightened and felt ganged upon by aforesaid Defendant supervisors and managers when they took Ms. Rutter's side against me without any reasonable basis and I was told to stop talking and threatened with consequences.

23. On March 10, 2006, due to the unbearable work environment, I resigned my employment by giving Defendant a two week notice in accordance with Defendant's policy.

24. That while I gave Defendant a two-week notice of my resignation as required under Defendant's policy handbook, Defendant did not allow me to remain on the job for the two weeks period and Defendant made my resignation effective immediately.

25. After making my resignation effective immediately, I was escorted out of the building by security guards like a thief or some other kind of dangerous criminal without any provocation whatsoever on my part.

26. That I was never paid by Defendant for the three (3) days that I was wrongfully suspended. While Ms. Kinch and Ms. Weiger retracted their accusation that I caused a meningitis scare, the suspension itself was never retracted and I was never paid for that period of three (3) days suspension.

27. That I was also not paid in full for the two weeks period that I gave Defendant notice of my resignation.

28. That during the course of my employment with Defendant, I was subjected to unfair treatment, excessive discipline, suspension, and ordered retraining, humiliation,

4

and abuse.

29. That asserts that other Defendant's my Caucasian and/or U.S. born co-workers who have committed similar and/or more serious errors than the one falsely alleged against me were not disciplined, suspended and/or ordered retrained by Defendant.

30. That none of my Caucasian and/or U.S. born co-workers were treated with humiliation, harassments, intense monitoring, and complete neglect of complaints of work-place discrimination.

31. That Defendant's work place environment was permeated with severe discriminatory behavior which any reasonable person will find hostile or abusive.

32. That I found the work environment abusive and hostile and suffered anguish, anxiety, fear, humiliation, loss of self-esteem, insult, shock, depression and other damages flowing from the hostile work environment.

33. Defendant has by its action deliberately caused or allowed my working conditions to become so intolerable that any reasonable person would feel compelled to resign.

34. That my resignation from Defendant's employment is a foreseeable consequence of Defendant's unlawful employment discrimination against me.

I, Geraldine Lauture, declare under the penalty of perjury that the foregoing is true and correct.

05/14/09
DATE

GERALDINE LAUTURE