# EXHIBIT 13

From:     Sherry Buebendorf
To:       Aimee Ringgold; Joycelyn Jones
Date:     2/14/06 3:20PM
Subject:  Diversity Complaint Follow-Up

Date 3-17-09
Harris
DEPOSITION EXHIBIT# 3
SUZANNE GILES, CVR
COMPOFELICE REPORTING SERVICES, INC.
(301) 596-2019  FAX (410) 290-7249

STA 00473

## Employee Relations Investigation
Human Resources

Name: Geraldine Lauture
Department: Microbiology

On 2/8/06 I met with Geraldine Lauture. After receiving a counseling report, Ms. Lauture requested to speak with me regarding how she believed she was being "treated unfairly." Ms. Lauture's counseling report was a documented verbal warning outlining several performance issues/incidents on different dates. The counseling report outlined an action plan involving 2 weeks of additional training for Ms. Lauture, as well as a monitoring of performance to determine improvement.

When I asked Ms. Lauture about her concerns prompting her to seek the assistance of the Diversity Manager, she stated she had not received proper training for the department. She further stated that she "has been written up for the last two months." She additionally, explained that she previously worked the evening shift but moved to day shift. She stated that when she moved to the day shift she did not know what to do – she was required to perform some different lab test on the day shift that were not performed on evening shift. Ms. Lauture also explained that she had difficulty working with Stephanie, one of the lab assistants. She stated that Stephanie would refuse to take direction from her with regard to laboratory specimens. Ms. Lauture stated that she reported her concerns regarding the change in shift routine and her difficulties with Stephanie to Peg Kinch, her supervisor. Ms. Lauture explained that, subsequent to that conversation, she received approximately 1 day of additional training. She explained to me that after that day of training, she understood the "day routine."

Ms. Lauture also explained that there is no one to relieve her when she goes to lunch. Therefore, there is a delay in processing lab specimens. Ms. Lauture explained that her supervisor is aware of this staffing issue. Ms. Lauture also related an instance when a stat specimen was tubed to the lab, prior to her going to lunch. Ms. Lauture stated that Stephanie told her that she would let someone else know that the specimen needed to be processed. Ms. Lauture stated that when she returned from lunch, the specimen still had not been processed and that she was held accountable for the delay. When asked about why Ms. Lauture thought the specimen would be processed in her absence – due to the fact that Ms. Lauture had stated that there was no one to relieve her for lunch, Ms. Lauture stated again that Stephanie stated that she would have someone process the specimen. Ms Lauture further stated that she never thought to ask anyone to run the test or to complete the test prior to leaving for lunch. Ms. Lauture also relayed another incident in which she received counseling regarding not documenting quality control checks for the eye wash equipment. Ms. Lauture stated that the sheet to document the quality controls was not where it should have been. She further stated that she asked someone where to find it and was told that it was being retyped. Neither Ms. Lauture nor the weekend shift associate documented any quality controls for approximately 20 days. Ms. Lauture said that when she received counseling regarding this incident, she told the supervisor that she had performed the quality checks daily – but had no place to

STA 00474

document them. She stated that when the new quality check form was posted, her supervisors directed her to postdate the quality checks. Ms. Lauture stated she did this.

Ms Lauture stated that the supervisors "take Stephanie's side" and that she "doesn't know if it is racial." Ms. Lauture explained that she did not know how she was able to work on the evening shift for 1.5 years without complaint and now there were multiple complaints regarding her performance. She stated, "There might be other issued which I do not know. You should ask the supervisors."

When Ms. Lauture was asked for examples of how she was being "treated differently" she relayed an incident of how when she works at the plating station she is asked to perform other tests as well – AFBs and PCPs, but that when other employees work the plating station they are not required to perform these additional tests. She gave no further examples of being "treated differently."

After speaking with Ms. Lauture, Aimee Ringgold and I spoke with Ms. Lauture's supervisors – Peg Kinch and Jane Weiger. I asked what shift AFBs and PCPs were performed and was told that they were only performed only on day shift. I was also told that weekenders that work the day shift are also required to perform AFBs and PCPs when they work the plating station. I also asked the supervisors about the quality checks that were not performed for the 20-day period. They stated that they had planned to speak with the weekender who had not performed the quality checks and that they had not planned to do any formal counseling with the weekender because this was the weekender's first instance with a performance issue. They further explained that Ms. Lauture had received counseling regarding quality controls because she has had multiple prior performance issues. The supervisors did admit that they had requested Ms. Lauture to postdate the quality checks.

As to Ms. Lauture's question regarding why she did not have any performance issues for the 1.5 years that she worked evening shift, it was determined by Ms. Lauture's admission there was no evening supervisor to immediately evaluate work performance.

After speaking with Ms. Lauture, reviewing documentation in Ms. Lauture's employee file and interviewing Peg Kinch and Jane Weiger, I am unable state that there were any instances of discrimination against Ms. Lauture.

CC: Joycelyn Jones and Aimee Ringgold

STA00475